UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TOMMY LYNN BRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-528-PLR-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Tommy Lynn Bray ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **RECOMMEND** that the Plaintiff's motion be **DENIED**, and the Commissioner's motion be **GRANTED**.

**I. PROCEDURAL HISTORY**

On July 13, 2012, the Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

began on September 15, 2010. [Tr. 128-31]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 89]. A hearing was held on August 20, 2014. [Tr. 23-49]. Thereafter, on January 14, 2015, the ALJ found the Plaintiff was "not disabled." [Tr. 8-22]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on August 26, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The Court has considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record and finds that the medical history of the Plaintiff and the content of the ALJ's decision are not in dispute and therefore need not be repeated here.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

2

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his

3

> past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 525. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. [Doc. 15 at 7-14]. The ALJ determined that the Plaintiff, who was found to have severe impairments of pneumoconiosis[2], chronic obstructive pulmonary disease, and mild degenerative changes of the lumbar spine, had an RFC to perform light work[3] except he must avoid concentrated exposure to extremes of cold or heat, wetness, humidity, and pulmonary irritants.

---

[2] "The pneumoconioses are a group of interstitial lung diseases caused by the inhalation of certain dusts and the lung tissue's reaction to the dust. The principal cause of the pneumoconioses is work-place exposure. . . ." Pneumoconioses, Centers for Disease Control and Prevention, https://www.cdc.gov/niosh/topics/pneumoconioses/default.html (last updated Aug. 24, 2017). Coal workers' pneumoconiosis, also known as black lung, is one of the most common forms of the disease. *Id.*

[3] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Light work also "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

4

[Tr. 13-14]. The Plaintiff challenges the ALJ's RFC determination on the basis that the Plaintiff's pulmonary impairments necessitate a more restrictive RFC than that found by the ALJ.

Since 2008, the Plaintiff has suffered from pneumoconiosis, a result of working in the coal mines for over 20 years. [Tr. 393-95]. Doctors have been monitoring the Plaintiff's lungs, however, as early as 1989. [Tr. 178-90]. X-rays and CT scans from 2004 forward demonstrate interstitial markings, multiple pulmonary nodules, and lesions in the lungs consistent with coal worker's pneumoconiosis. [Tr. 250-51, 293, 313, 388, 430, 443]. When the Plaintiff came under the care of treating pulmonologist Eric Weaver, M.D., in 2012, the Plaintiff routinely underwent radiology tests every six months to monitor his lungs. [Tr. 37-38].

In the disability determination, the ALJ concluded that the Plaintiff could perform light work with additional environmental limitations, including no concentrated exposure to extremes of cold or heat, wetness, humidity, or pulmonary irritants. [Tr. 14]. Assessing the functional effects caused by the Plaintiff's pulmonary impairments, the ALJ found little change had occurred in radiographic evidence since 2008. [Tr. 15]. Specifically, the ALJ noted that x-rays performed by Dr. Weaver in 2014 documented no significant change. [*Id.*] While the Plaintiff has been prescribed three inhaled bronchodilator medications since 2008, the ALJ found the Plaintiff's allegations that he could not breath well unsubstantiated by the record, including Dr. Weaver's treatment notes from 2012 through 2014, which document no respiratory distress, clear lungs to auscultation bilaterally with no wheezing or rhonchi, oxygen levels at rest on room air at 96% following hospitalization of an pneumonia, and only occasional coughing with no increased work breathing or signs of respiratory distress on examination. [*Id.* (citing Tr. 348, 470-72, 499-500)].

The Plaintiff argues that the ALJ mischaracterized the medical records when she concluded that no significant change in radiographic evidence had occurred since 2008. [Doc. 15 at 8]. The

5

Plaintiff cites to CT images of his chest taken in 2012 and 2013 that demonstrate several lung masses had increased in size since 2008. [*Id.* (citing Tr. 388, 465)]. The Court agrees with the Plaintiff that the cited imaging studies show an increase in mass size. Despite this growth, however, Dr. Weaver, as well as radiologists interpreting the imaging results, often noted that the Plaintiff's lung masses were stable, similar in appearance, or had not significantly changed over time. [Tr. 389, 432, 443, 475, 499, 502-03]. Therefore, the Court finds that the ALJ did not misstate the evidence.

The Plaintiff also maintains that the ALJ cherry-picked through the evidence, focusing on select treatment notes from Dr. Weaver that document no signs of respiratory distress on examination, while ignoring other pertinent treatment records that demonstrate the Plaintiff experienced moderate airway restriction. [Doc. 15 at 8 (citing Tr. 206, 232, 243, 248, 249, 266, 389)]. The Court disagrees. As an initial matter, the Court observes that the majority of the medical records cited by the Plaintiff are from 2008, predating the Plaintiff's alleged onset date by two years. Medical records predating a claimant's onset date are generally of little probative value. *Melius v. Colvin*, No. CV 15–10820, 2016 WL 633953, at *4 (E.D. Mich. Feb. 9, 2016), *adopted by*, No. 15–CV–10820, 2016 WL 1104467, at *1 (E.D. Mich. Mar. 22, 2016). The only treatment record cited by the Plaintiff that was authored during the period under review is a March 2012 treatment note from Dr. Weaver. [Tr. 389]. The Plaintiff relies on this particular treatment note to show that he did not respond to bronchodilation. [Doc. 15 at 8]. The ALJ, however, specifically addressed this treatment note, finding that the Plaintiff's oxygen level at rest on room air remained at 96% despite claims that the Plaintiff had trouble breathing. [Tr. 15, 389]. The Court has carefully examined all of the medical records related to the period under review and finds that the ALJ's reliance on, and interpretation of, the evidence is reasonable and provides substantial

6

evidence supporting the ALJ's RFC determination. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

The Plaintiff additionally maintains that the ALJ did not properly assess his subjective allegations pursuant to Social Security Ruling 96-7p because the ALJ failed to reference statements the Plaintiff made in a Function Report and Fatigue Questionnaire, both of which document breathing complaints, an inability to perform or complete daily living activities due to becoming easily winded, and dismissal from jobs as a result of respiratory problems. [Doc. 15 at 9-11]. The Plaintiff argues that the foregoing evinces that he cannot perform the demands of light work or withstand any amount of exposure to pulmonary irritants, heat, cold, humidity, or wetness. [*Id.* at 10-12].

Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors;

(iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (July 2, 1996) (citing 20 C.F.R. § 1529(c)(4)).

The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. However, the ALJ's finding must be supported by substantial evidence. *Id.* Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

The Court finds substantial evidence supports the ALJ's credibility determination. In addition to discounting the degree of limitation alleged by the Plaintiff due to the foregoing medical evidence, the ALJ properly concluded that the Plaintiff's decision to continue smoking is inconsistent with his allegations of disabling limitations due to breathing problems. [Tr. 16]; *see Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987) (upholding "the ALJ's conclusion that [the claimant's] pulmonary condition does not constitute a significant nonexertional impairment restricting a full range of light work" where the ALJ found "that it was difficult to envision a severe environment restriction imposed by a pulmonary condition when the claimant was a heavy smoker").

The ALJ also discounted the Plaintiff's credibility because he continued to receive unemployment benefits, which requires that an individual present himself as willing and able to

work, after his alleged onset date. [Tr. 16]. The ALJ observed that "[w]hile receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits per se, it is only one of many factors that must be considered in determining whether the claimant is disabled." [*Id.*]. The ALJ's conclusion is consistent with this Court's holding in *Webster v. Colvin*, in which case the Court found "the receipt of unemployment benefits, while an appropriate factor that should be considered in disability claims, is only one of the many factors an ALJ must consider, and as such, the appropriate weight due to the receipt of unemployment benefits will depend on the particular facts of each case." No. 3:13-CV-497-TAV-HBG, 2014 WL 4095341, at *9 (E.D. Tenn. Aug. 19, 2014) (discussing an August 2010 memorandum released by the Chief ALJ for the Social Security Administration discussing the receipt of unemployment benefits in the context of disability claims). Here, the Plaintiff's receipt of unemployment benefits was but one factor, along with the Plaintiff's decision to continue smoking and the medical evidence of record, the ALJ could properly consider in assessing the Plaintiff's credibility.

The Plaintiff suggests that the ALJ did not comply with Social Security Ruling 96-7p because she did not make specific mention to the Plaintiff's written statements in his Function Report and Fatigue Questionnaire. [Doc. 10 at 14]. To the contrary, the ALJ specifically acknowledged the Plaintiff's statements when she discussed his testimony at the outset of the RFC portion of the decision. [Tr. 14-15]. The Court of Appeals for the Sixth Circuit has also explained that an ALJ's credibility determination need not include an item-by-item analysis of all the factors identified in Social Security Ruling 96-7p. *Bowman v. Chater*, No. 96–3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (Table). Furthermore, it is well established that "an ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006). Nonetheless, the Court finds

9

that the ALJ considered the Plaintiff's specific allegations regarding his pulmonary impairments and associated symptoms and limitations.[4]

Notably absent from the record is any medical opinion from a treating or examining source supporting the Plaintiff's alleged limitations. Two nonexamining state agency physicians, however, did review the record and opined the Plaintiff was capable of medium work with environmental limitations identical to those included in the RFC. [Tr. 53-54, 74-75]. The ALJ assigned "some weight" to the state agency physicians' opinions, assessing an RFC of light work based on later submitted evidence and the Plaintiff's testimony. [Tr. 16]. However, the state agency physicians' opinions on the environmental limitations were found to be consistent with the evidence of record and accommodated the Plaintiff's pulmonary impairments, thereby receiving "great weight" by the ALJ. [*Id.*]. No other medical source, including Dr. Weaver, noted any limitations or restrictions as a result of the Plaintiff's pulmonary impairments.

Accordingly, the Court finds that substantial evidence supports the ALJ's RFC determination, and the Plaintiff's allegations to the contrary are not well-taken.

---

[4] The Court notes that at step five of the sequential evaluation, the ALJ found that the Plaintiff could perform other jobs in the national economy including officer help, *Dictionary of Occupational Title* ("*DOT*") #239.567-010, cashier II, *DOT* #211.462-010, and marker, retail, *DOT* #209.587-034. [Tr. 18]. As pointed out in the Commissioner's brief, none of these jobs include exposure to weather, extreme cold or heat, wetness, humidity, or other environmental conditions. U.S. Dep't of Labor, *DOT* §§ 239.567-010, 1991 WL 672232, 211.462-010, 1991 WL 671840, and 209.587-034, 1991 WL 671802 (4th Ed. 1991).

## IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[5] the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 14**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

Respectfully Submitted,

*/s/ Bruce Guyton*
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide de novo review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).